1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   EILEEN L. DUTRA,                          No.  2:24-CV-1145-DMC

12                    Plaintiff,

13        v.                                    MEMORANDUM OPINION AND ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                     Defendant.
16

17

18             Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19   review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20   Pursuant to the written consent of all parties, ECF Nos. 5 and 6, this case is before the

21   undersigned as the presiding judge for all purposes, including entry of final judgment.  See 28

22   U.S.C. § 636(c).  Pending before the Court are the parties' briefs on the merits, ECF Nos. 11 and

23   13.

24             The Court reviews the Commissioner's final decision to determine whether it is:

25   (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

26   whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

27   more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

28   (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

1  a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

2  including both the evidence that supports and detracts from the Commissioner's conclusion, must

3  be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

4  v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's

5  decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

6  Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

7  findings, or if there is conflicting evidence supporting a particular finding, the finding of the

8  Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

9  Therefore, where the evidence is susceptible to more than one rational interpretation, one of

10  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

11  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

12  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

13  Cir. 1988).

14         For the reasons discussed below, the matter will be remanded for further

15  proceedings.

16

17                **I.  THE DISABILITY EVALUATION PROCESS**

18         To achieve uniformity of decisions, the Commissioner employs a five-step

19  sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§

20  404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

21  
22        Step 1      Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

23  
24        Step 2      If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

25  
26        Step 3      If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

27  
28

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

3

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on June 21, 2021.  See CAR 28.[1]  In the application, Plaintiff claims disability began on March 26, 2020.  See id.  Plaintiff's claim was initially denied.  Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on April 3, 2023, before Administrative Law Judge (ALJ) William Spalo.  In a May 31, 2023, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1.   The claimant has the following severe impairment(s): lumbar disc disease and epilepsy.

2.   The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations.

3.   The claimant has the following residual functional capacity: light work; the claimant can occasionally crawl, stoop, and climb ladders, ropes, or scaffolds; the claimant can frequently balance, kneel, crouch, or climb ramps or stairs; the claimant must avoid moderate exposure to dangerous, moving machinery and unprotected heights.

4.   Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant is capable of performing past relevant work as a manager.

See id. at 30-.

After the Appeals Council declined review on March 4, 2024, this appeal followed.


## III.  DISCUSSION

In her opening brief, Plaintiff argues as follows: (1) the ALJ erred at Step 4 in concluding that Plaintiff does not require use of an assistive device for ambulation; (2) the ALJ erred at Step 2 in determining that certain impairments were not severe; (3) the ALJ erred at Step 2 in concluding that psychiatric impairments were not medically determinable; (4) the ALJ erred at Step 2 and throughout the decision in failing to even mention fibromyalgia; (5) the ALJ erred at Step 4 with respect to evaluation of Plaintiff's subjective statements and testimony; and (6) the

---

[1]    Citations are to the Certified Administrative Record (CAR) lodged on June 13, 2024, ECF No. 8.

1  ALJ erred  at Step 4 with respect to evaluation of lay witness evidence provided by Plaintiff's

2  husband.

3        A.    **Severity of Impairments (Step 2)**

4          To qualify for benefits, the plaintiff must have an impairment severe enough to

5  significantly limit the physical or mental ability to do basic work activities.  See 20 C.F.R. §§

6  404.1520(c), 416.920(c).[2]  In determining whether a claimant's alleged impairment is

7  sufficiently severe to limit the ability to work, the Commissioner must consider the combined

8  effect of all impairments on the ability to function, without regard to whether each impairment

9  alone would be sufficiently severe.  See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996);

10  see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment, or

11  combination of impairments, can only be found to be non-severe if the evidence establishes a

12  slight abnormality that has no more than a minimal effect on an individual's ability to work.  See

13  Social Security Ruling (SSR) 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.

14  1988) (adopting SSR 85-28).  The plaintiff has the burden of establishing the severity of the

15  impairment by providing medical evidence consisting of signs, symptoms, and laboratory

16  findings.  See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone

17  is insufficient.  See id.

18          In addressing the severity of Plaintiff's medically determinable impairments at

19  Step 2, the ALJ found lumbar disc disease and epilepsy to be medically determinable severe

20  impairments.  See CAR 31.  The ALJ concluded that some impairments were not sever and others

21  were not medically determinable.  See id.  Plaintiff argues that the ALJ erred in determining some

22  impairments are not medically determinable, and in determining that some medically

23  determinable impairments are not severe.  See ECF No. 11, pgs. 8-12.  Plaintiff also argues that

24  the ALJ erred at Step 2 in failing to consider fibromyalgia.  See id. at 12-13.

25  / / /

---

26      [2]    Basic work activities include: (1) walking, standing, sitting, lifting, pushing,
pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding,

27  carrying out, and remembering simple instructions; (4) use of judgment; (5) responding
appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes

28  in a routine work setting.  See 20 C.F.R. §§ 404.1521, 416.921.

1          1.     Impairments Found Not Medically Determinable or Not Severe

2          As to impairments found to be not medically determinable, the ALJ stated:

3          <u>The claimant has a non-medically determinable impairment of cognitive
deficits/disorder.</u> There is insufficient objective evidence to substantiate
4          this alleged impairment during the period at issue. During the period at
issue, records reflected intermittent complaints or discussion relative to the
5          claimant's mental condition(s). On the other hand, records indicated the
claimant did not need to see psychiatrist and had cancelled her
6          appointment for consultation of memory loss (Ex. 13F, pages 19 and 77).
MRI film of the brain was unremarkable and mental status examinations
7          revealed intact results throughout the period at issue (e.g., Ex. 2F and
13F). In October 2021, the claimant weas examined by M. Harris, Psy.D.,
8          for a mental assessment. Dr. Harris reported poor calculation, but
otherwise normal mental status examination. She assessed no diagnosable
9          mental impairment. She found the claimant has no significant impairment
in any work-related functional ability (Ex. 3F). Such evidence shows there
10         is no medically determinable cognitive (or mental) impairment.

11         As for medical opinion evidence, Dr. Harris found the claimant has no
significant limitation in the abilities to perform simple or complex tasks,
12         perform work activities on a consistent basis, maintain attendance,
complete a normal workday/workweek, interact with others, or deal with
13         stress (Ex. 3F). State agency psychiatric consultants found the claimant
has no medically determinable mental impairment and found no additional
14         analysis required (Ex. 1A and 3A). These opinions are persuasive. They
are supported by the lack of objective abnormalities, the lack of treatment,
15         and extensive daily activities (detailed in full below).

16         CAR 31 (underlining in original).

17         As to impairments found to be medically determinable but not severe, the ALJ

18  stated:

19         <u>The claimant has non-severe impairments of status post-surgery of
prolapsed uterus, bunions/hammertoes, right thumb arthritis, and left
20         elbow bursitis.</u> These impairments did not result in more than minimal
functional limitation for a continuous period of 12 months or more. As to
21         the claimant's prolapsed uterus, records reflected surgical intervention in
January 2023. By March 2023, physicians noted the claimant was doing
22         OK. An examination showed the claimant was alert, cooperative, and in
no acute distress. Physicians indicated that the claimant should be
23         "normal" by 12 weeks post-surgery (Ex. 12F). Since there is no evidence
of continued symptoms and no projection of limitations, I find this
24         limitation is non-severe. Regarding the claimant's bunions/hammertoes,
physicians recommended conservative care with yoga toe holders, ice, and
25         therapeutic exercise (Ex. 12F). Physicians reported repeated findings of
normal gait during the period at issue (Ex. 2F, 4F, and 5F). Such evidence
26         shows this impairment is non-severe. As to the claimant's right thumb
arthritis and left elbow bursitis, records reflected minimal, conservative
27         care recommendations, no ongoing, consistent symptoms or complaints,

28  / / /

6

and no projection of limitations lasting up to 12 months or more. Thus, I find these impairments are non-severe.

CAR 31 (underlining in original).

At the outset, the Court addresses Defendant's argument that any error at Step 2 regarding the ALJ's findings that some impairments are not medically determinable and that others are not severe is harmless.  In particular, Defendant contends that any error at Step 2 is rendered harmless where the ALJ addresses all impairments – even those founds not medically determinable or not severe – at Step 4 in determining residual functional capacity.  See ECF No. 13, pgs. 2-3.  According to Defendant, the ALJ found in Plaintiff's favor at Step 2 in determining that she has at least one medically determinable sever impairment and that any error at Step 2 as to other impairments was rendered harmless because the ALJ addressed all alleged impairments at Step 4.  See id. (citing ALJ decision at CAR 32-35).

The Court does not agree.  Notwithstanding Defendant's representation, a review of the hearing decision's analysis at Step 4 reflects no discussion as to cognitive impairments.  Likewise, the hearing decision did not discuss at Step 4 each of Plaintiff's specific impairments found not severe at Step 2.  Thus, the Court cannot conclude that the ALJ provided an exhaustive analysis at Step 4 such as would excuse any errors at Step 2.

As to impairments found not medically determinable (i.e., cognitive deficits), Plaintiff has not cited to any objective evidence of a diagnosis of cognitive deficits.  Notably, Plaintiff herself indicates that Dr. Harris determined that Plaintiff has no cognitive impairment.  The state agency psychological consultants agreed.  According to Plaintiff, her assertion is supported by her own subjective allegations.  See ECF No. 11, pg. 10.  Plaintiff bears the burden of establishing the existence of medically determinable impairments by way of objective evidence.  See 20 C.F.R. §§ 404.1508, 416.908. Plaintiff's own statement of symptoms alone is insufficient.  See id.  The Court finds no error at Step 2 regarding impairments found not medically determinable because Plaintiff failed to meet her burden of proof.

/ / /

/ / /

7

1    As to impairments found not severe, Plaintiff again has not met her burden of

2  citing to evidence showing that such impairments have more than a minimal effect on her ability

3  to work.  Here Plaintiff has again relied on her own subjective statements, which is insufficient.

4  While Plaintiff has cited to portions of the record where objective evidence supports various

5  diagnoses relating to impairments the ALJ found not severe, the issue is not whether Plaintiff has

6  a diagnosed impairment, but whether such impairment causes more than a minimal effect on her

7  ability to work.  Despite evidence of diagnoses, Plaintiff has not pointed to objective evidence of

8  work-related limitations resulting from those diagnoses.  To the contrary, the evidence cited by

9  the ALJ in the hearing decision supports the ALJ's conclusion.  In particular, Plaintiff was

10  "normal" by 12 weeks post-surgery with no evidence of continued symptoms.  See CAR 31

11  (citing Exhibit 12F).  Likewise, as to bunions, the objective evidence shows that Plaintiff reported

12  normal gait and physicians recommended only conservative care with yoga toe holders, ice, and

13  exercise.  See id.  Finally, as to Plaintiff's right thumb arthritis and left elbow bursitis, the

14  evidence reflects minimal conservative care and no anticipated continuing problems.  See id.

15  (citing Exhibits 12F, 2F, 4F, and 5F).

16    2.    Fibromyalgia

17    Plaintiff argues the ALJ erred at Step 2 and throughout the decision by failing to

18  address fibromyalgia.  See ECF No. 11, pgs. 12-13.  According to Plaintiff:

19    These similar/overlapping impairments [fibromyalgia and chronic
20  pain] are mentioned multiple times in the treating record, including with
ascription to Ms. Dutra's bad childhood. (E.g., CAR 675 ["Fibromyalgia
21  Dx made '21, based on generalized allodynia. Presumably rooted in
chronic central stress hormone dysregulation caused by chronic stress in
childhood (ACEs)"], 720, 724, 728, 739 ["Chronic pain syndrome"], 862
22  [FMS].) Social Security Ruling 12-2p makes fibromyalgia's status as an
MDI dependent on satisfying either the 1990 or 2010 American College of
23  Rheumatology criteria and does not speak directly of allodynia but criteria
include widespread pain, tender points, and recurrence of conditions like
24  cognitive or memory problems, depression, anxiety, easily found in this
record; however, this ruling also expressly directs resolution of what
25  amounts to "ambiguity" by, for instance, recontacting treating sources,
which here reasonably means asking Ms. Dutra's doctors whether their
26  FMS diagnosis can be better aligned with the Ruling's MDI criteria. In
addition, Ms. Dutra's chronic pain diagnosis connotes similar signs,
27  symptoms, and functional limitations; either diagnosis means Ms. Dutra
has pain in excess of what would be reasonably expectable from her other
28  objectively established impairments alone; and in view of discussed step-

1    two law, the easiest solution would be to recognize a discrete excess pain
     impairment at step two and expressly consider it at later steps in the
2    sequential evaluation.
             But this decision didn't even mention any such impairment at step
3    two, or later. . . .

4           ECF No. 11, pgs. 12-13.

5           In a footnote, Defendant contends the ALJ did not err because: (1) Plaintiff has

6    pointed to no evidence of a fibromyalgia diagnosis; and (2) any error at Step 2 is harmless

7    because the ALJ considered Plaintiff's subjective claims of chronic pain, weakness, and fatigue at

8    Step 4.  See ECF No. 13, pg. 3, n.2.

9           The Court agrees with Defendant.  Plaintiff has not pointed to any diagnosis of

10   fibromyalgia which is consistent with the regulations.  Social Security Ruling (SSR) 12-2p

11   governs.  While Plaintiff is correct that fibromyalgia may be considered a medically determinable

12   impairment, it may be so considered only when supported consistent with 1990 or 2010 American

13   College of Rheumatology (ACR) criteria for classification of fibromyalgia.  See id.  Here,

14   Plaintiff alleges that fibromyalgia was diagnosed based on generalized allodynia (unexplained

15   pain).  See ECF No. 11, pgs. 12-13.  Plaintiff has pointed to no evidence of a diagnosis of

16   fibromyalgia consistent with the ACR's 1990 or 2010 criteria.  For this reason, the Court finds no

17   error in the ALJ's failure to specifically consider fibromyalgia at Step 2.

18          The Court also finds that any error which can be found at Step 2 regarding

19   fibromyalgia is rendered harmless by the ALJ's consideration of Plaintiff's chronic pain and

20   fatigue allegations at Step 4 (discussed below).  See Buck v. Berryhill, 869 F.3d 1040, 1049 (9th

21   Cir. 2017) (citing Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012)).

22          **B.      Residual Functional Capacity (Step 4)**

23          Residual functional capacity (RFC) is the most a person "can still do despite [the

24   individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2012); see also Valencia v.

25   Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current

26   "physical and mental capabilities").  Thus, residual functional capacity describes a person's

27   / / /

28   / / /

9

exertional capabilities in light of his or her limitations.[3]  An ALJ's RFC finding must include all

of the limitations the ALJ has found to be supported by the evidence of record.  See SSR 85-15.

Where there is a colorable claim of mental impairment, the regulations require the ALJ to follow

a special procedure.  See 20 C.F.R. §§ 404.1520a(a), 416.920a(a).  The ALJ is required to record

pertinent findings and rate the degree of functional loss.  See 20 C.F.R. §§ 404.1520a(b),

416.920a(b).

           At Step 4, the ALJ concluded that Plaintiff has the residual functional capacity to

perform a range of light work, with some physical limitations.  See CAR 32.  Plaintiff argues that

the ALJ erred with respect to evaluation of her subjective statements and testimony, with respect

to evaluation of lay witness evidence provided by Plaintiff's husband, and with respect to

Plaintiff's use of an assistive device.  See ECF No. 11, pgs. 6-8, 14-19.

                      1.    Plaintiff's Subjective Statements and Testimony

           The Commissioner determines the weight to be given to a claimant's own

statements and testimony, and the court defers to the Commissioner's discretion if the

Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94

F.3d 520, 522 (9th Cir. 1996).  An explicit finding must be supported by specific, cogent reasons.

See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.

See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify

what testimony is not afforded weight and what evidence undermines the testimony.  See id.

Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's

---

[3]  Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a).  "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  See 20 C.F.R. §§ 404.1567(a) and 416.967(a).  "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  See 20 C.F.R. §§ 404.1567(b) and 416.967(b).  "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  See 20 C.F.R. §§ 404.1567(c) and 416.967(c).  "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  See 20 C.F.R. §§ 404.1567(d) and 416.967(d).  "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.  See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

1 reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also

2 Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue,

3 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

4          If there is objective medical evidence of an underlying impairment, the

5 Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

6 because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

7 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

8          The claimant need not produce objective medical evidence of the
           [symptom] itself, or the severity thereof.  Nor must the claimant produce
9          objective medical evidence of the causal relationship between the
           medically determinable impairment and the symptom.  By requiring that
10         the medical impairment "could reasonably be expected to produce" pain or
           another symptom, the Cotton test requires only that the causal relationship
11         be a reasonable inference, not a medically proven phenomenon.

12         80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
           Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).
13

14          The Commissioner may, however, consider the nature of the symptoms alleged,

15 including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

16 947 F.2d at 345-47.  In weighing a claimant's statements and testimony, the Commissioner may

17 also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other

18 inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to

19 follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and

20 (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See

21 Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

22 claimant cooperated during physical examinations or provided conflicting statements concerning

23 drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

24 claimant testifies as to symptoms greater than would normally be produced by a given

25 impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

26 Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

27 / / /

28 / / /

11

1    Regarding reliance on a claimant's daily activities to discount testimony of

2  disabling pain, the Social Security Act does not require that disability claimants be utterly

3  incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has

4  repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . .

5  does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v.

6  Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th

7  Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a

8  claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic

9  restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the

10  claimant was entitled to benefits based on constant leg and back pain despite the claimant's

11  ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home

12  activities are not easily transferable to what may be the more grueling environment of the

13  workplace, where it might be impossible to periodically rest or take medication").   Daily

14  activities must be such that they show that the claimant is ". . .able to spend a substantial part of

15  his day engaged in pursuits involving the performance of physical functions that are transferable

16  to a work setting."  Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard

17  before relying on daily activities to discount a claimant's pain testimony.  See Burch v. Barnhart,

18  400 F.3d 676, 681 (9th Cir. 2005).

19    At Step 4, the ALJ summarized Plaintiff's subjective statements and testimony as

20  follows:

21        The claimant alleged disability resulting from physical impairments. The
         claimant reported symptoms of chronic pain, weakness, seizures, and
22        fatigue. The claimant admitted she has not had a seizure since 2017 (Ex.
         6E). The claimant indicated she is limited due to the severity of her
23        symptoms. The claimant indicated she is unable to lift any significant
         weight. The claimant stated she is unable to engage in prolonged sitting,
24        standing, or walking. The claimant reported difficulty with squatting,
         bending, reaching, kneeling, stair climbing, memory, concentration,
25        completing tasks, following instructions, getting along with others, and
         understanding. The claimant indicated there are times she is incapable of
26        performing tasks. The claimant stated she needs prolonged rest periods
         during the day. The claimant advised she is restricted in activities of daily
27        living. The claimant alleged she is unable to sustain regular and

28  / / /

1    continuous work function (Ex. 6E, 7E and Hearing Testimony).

2    CAR 32-33.

3    The ALJ found Plaintiff's allegations inconsistent with objective evidence of

4    record, Plaintiff's daily activities, and Plaintiff's treatment history, stating as follows:

5    First, the allegations are inconsistent with treatment reports and objective
     evidence. Prior to the period at issue, records reflected extensive treatment
6    for back pain, including surgical intervention. In December 2019, x-rays
     of the lumbar spine showed postsurgical changes of L4 laminectomy with
7    posterior and anterior fusion at L4-5 and multi-level degenerative changes
     of the lumbar spine with facet arthropathy at L4-5 and L5-S1 (Ex. 1F). In
8    March 2020, the claimant alleged onset of disability. In July 2020, records
     reflected video office visit for treatment of back pain. Physicians
9    recommended treatment with medication and home exercise in lieu of
     physical therapy (due to COVID-19 orders). In October 2020, follow-up
10   records showed goals of improving core and getting back to walking (Ex.
     2F). In June 2021, the claimant presented to the neurology epilepsy clinic
11   for follow-up of long-standing seizure disorder. Physicians reported
     seizures were well-controlled with medication. Physicians noted no
12   seizure medication side effects (Ex. 13F). In July 2021, an examination
     showed normal results, including normal gait (Ex. 2F). In September
13   2021, an examination showed normal gait and full range of motion in
     musculoskeletal systems. Physicians recommended medication and use of
14   forearm crutches as needed (Ex. 5F). In October 2021, the claimant was
     examined by M. Song, M.D., for a physical assessment. Dr. Song reported
15   complaints of chronic back pain and epilepsy. An examination revealed
     tenderness in the lumbar spine, mildly diminished range of motion in the
16   lumbar spine and use of cane during ambulation, but normal gait, 5/5
     muscle strength in alle extremities, intact sensory testing, negative straight
17   leg raise testing, normal neurological findings, and normal reflexes.
     Diagnoses were low back pain with history of lumbar spinal fusion
18   surgery in 2019 and seizure disorder (Ex. 4F). Subsequent records
     reflected recurrent office and video visits for follow-up and medication
19   management. Examinations were generally unremarkable (Ex. 5F-7F). In
     February 2022, treating physicians reported no breakthrough seizures.
20   Physicians noted no seizure medication side effects (Ex. 13F). In May
     2022, treating physicians assessed pain complaints. Notations indicated
21   the claimant felt like she was doing well and felt normal (Ex. 7F). In
     August 2022, treating physicians assessed seizures as well-controlled with
22   medication (Ex. 7F). In October 2022, the claimant initiated physical and
     occupational therapy to assist with pain and mobility. Records reflected
23   recurrent visits for therapeutic services (Ex. 9F). In November 2022,
     treating physicians reported no breakthrough seizures or auras (Ex. 7F). In
24   April 2023, treating physicians reported no breakthrough seizures.
     Physicians noted no seizure medication side effects (Ex. 13F). In sum,
25   records reflected minimal treatment, well-controlled seizures, back pain
     management with medication, and intact examinations during the period at
26   issue. Physicians repeatedly indicated no medication side effects and
     records suggested significant functioning. Such evidence is inconsistent
27   with allegations of ongoing, disabling symptoms and limitations.

28   ///

13

1

2

3

4

5

6

7

8

9

10

11

12

Second, the allegations are inconsistent with daily activities. Significantly, records indicated the claimant is capable of caring for her husband and young grandchild. Additional reports showed the claimant has been capable of performing personal care tasks (with some assistance from husband), preparing simple meals, completing household chores, washing laundry, gardening, and caring for animals (Ex. 7E and 3F). In fact, during a consultative examination, the claimant stated she was independent in activities of daily living and did not need assistance with completing tasks (Ex. 3F). Such evidence is inconsistent with allegations of ongoing, disabling symptoms and limitations.

Finally, the allegations are inconsistent with treatment history. As detailed above, records showed limited, conservative care during the period at issue, primarily consisting of video and office visits and medication. One would expect aggressive care if the claimant were disabled, as alleged. Per SSR 16-3p, I considered alternative rationale to explain the claimant's history of care, including, but not limited to mental limitations and cost. As such rationale was not substantiated by significant evidence of record, I find the claimant's history of care suggests symptoms are not as severe as alleged.

CAR 33-34.

13

14

15

16

17

According to Plaintiff, the ALJ's analysis is flawed because: (1) a mere recitation of the objective medical evidence fails to adequately link any specific portion of testimony found not supported by specific evidence; (2) Plaintiff's activities of daily living are limited and do not suggest an ability to engage in full-time work; and (3) references to Plaintiff's treatment history is "nothing more than an emotional/rhetorical appeal. . . ."  ECF No. 11, pgs. 15-18.

18

19

20

21

22

The Court finds no error.  As explained above, the ALJ appropriately considers a claimant's inconstant statements in determining what weight to give the claimant's subjective statements and testimony.  See Smolen, 80 F.3d at 1284.  Here, the ALJ noted that Plaintiff alleges limited activities of daily living.  The ALJ also observed that, at an October 27, 2021, examination, Plaintiff reported as follows to the examining physician:

23

24

25

The claimant denied having limitations with daily self-care.  No significant difficulties with shopping, self-care, or independent living. Claimant is independent for basic ADLs [activities of daily living] and does not need help with preparing meals or doing light household chores. Claimant is able to make change at the store. . . .

26

CAR 606 (Exhibit 3F).

27

/ / /

28

/ / /

14

1    Given Plaintiff's inconsistent statements regarding her daily activities, the Court

2    finds that the ALJ's analysis of Plaintiff's subjective statements and testimony is supported by

3    proper legal analysis and substantial evidence.

4                    2.    Lay Witness Evidence

5    The new regulatory framework, which applies to claims filed, as here, after March

6    27, 2017, identifies five categories of evidence: (1) objective evidence; (2) medical opinions; (3)

7    "other" medical evidence; (4) evidence from nonmedical sources; and (5) prior administrative

8    medical findings. 20 C.F.R. § 416.913(a)(1)–(5). With respect to evidence from nonmedical

9    sources—the category under which lay testimony falls—the revised regulations expressly provide

10   that the agency is "not required to articulate how we considered evidence from nonmedical

11   sources using the requirements [set forth] in paragraphs (a) through (c) in this section." 20 C.F.R.

12   § 416.920c(d). Thus, the revised regulations distinguish between evidence the ALJ is required to

13   "consider" and evidence that requires the ALJ to "articulate" how the evidence was considered.

14   Based on a plain reading of the revised regulations, the new regulatory framework requires an

15   ALJ to *consider* lay testimony but does not necessarily require the ALJ to articulate *how* it was

16   considered.

17   In this case, the ALJ noted at Step 4 that statements from Plaintiff's husband are

18   consistent with those provided by Plaintiff.  See CAR 33.  Thus, it is clear that the ALJ

19   considered lay witness evidence and, as such, did not err under the revised regulations.

20                   3.    Use of an Assistive Device

21   Plaintiff argues that the ALJ erred in concluding that the record does not support

22   the need for an assistive device.  See ECF No. 11, pgs. 6-8.  According to Plaintiff, per the

23   vocational expert testimony the need for an assistive device would preclude all work.  See id. at 6

24   (citing vocational expert's testimony at CAR 76).

25   As to an assistive device, the ALJ stated as follows at Step 4:

26         . . .I find the requirement for a cane is not persuasive. This limitation is not
           supported by ample evidence or consistent with evidence of record.
27         Although the record mentions one fall due to dizziness (attributable to
           seizure medication) in September 2021 (Ex. 5F), this record appeared to
28         be the exception, as the majority of records showed no seizure medication

                                          15

side effects (Ex. 13F). In fact, records indicated no falls in the year prior to February 2022, which suggests falls were generally infrequent (Ex. 13F, page 32). Finally, examinations showed normal gait and full strength during the period at issue (Ex. 2F and 4F). The lack of objective evidence necessitating the use of a cane, coupled with the intact findings on examination, suggest this limitation is not warranted.

CAR 35.

A review of the record does not support the ALJ's assessment. In particular, the psychological evaluation report at Exhibit 4F specifically states: "Assistive Device: Cane is required." CAR 613. Additionally, the ALJ appears not to have considered that Plaintiff was prescribed an assistive device on September 3, 2021. See CAR 659. Given the vocational expert's testimony that all work would likely be precluded by a requirement to use an assistive device, the matter will be remanded to allow the Commissioner to further consider Plaintiff's need for an assistive device and the effect of such need on Plaintiff's residual functional capacity.[4]

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[4] The Court notes that, on April 8, 2025, Plaintiff informed the Court that she has been determined to be disabled as of June 1, 2023, based on a separate application. See ECF No. 15. Therefore, on remand the issue will be whether Plaintiff was disabled from the alleged onset date of March 26, 2020, through the ALJ's decision in this case dated May 31, 2023.

1

## IV.  CONCLUSION

2          For the foregoing reasons, this matter will be remanded under sentence four of 42

3   U.S.C. § 405(g) for further development of the record and/or further findings addressing the

4   deficiencies noted above.

5          Accordingly, IT IS HEREBY ORDERED that:

6          1.      Plaintiff's motion for summary judgment, ECF No. 11, is granted;

7          2.      Defendant's motion for summary judgment, ECF No. 13, is denied;

8          3.      The Commissioner's final decision is reversed and this matter is remanded

9   for further proceedings consistent with this order; and

10         4.      The Clerk of the Court is directed to enter judgment and close this file.

11

12  Dated:  September 15, 2025

13                                      _____
                                        DENNIS M. COTA
14                                      UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17